UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-CV-62058-SMITH/VALLE

YASSER ANAYA,

      Petitioner,

v.

JULIE JONES, Secretary,
  Florida Department of Corrections;
JOHN DEBELL, Warden,
  Sumpter Correctional Institution; and
PAMELA JO BONDI,
  Florida Attorney General;

      Respondents.
_____/

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE

This matter is before the Court on Petitioner Yasser Anaya's ("Petitioner") Second Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"). (ECF No. 1). United States District Judge Rodney Smith has referred the Petition to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636. (ECF No. 15).

After due consideration of the Petition, the Response from the Secretary of the Florida Department of Corrections (the "State") (ECF No. 13), and all pertinent portions of the underlying record, the undersigned recommends that the Petition be **DENIED** without an evidentiary hearing. *See Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (providing that an assertion of ineffective assistance of counsel does not require an evidentiary hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.") (quoting 28 U.S.C. § 2255); *see also Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (concluding that an evidentiary hearing is not required unless petitioner can demonstrate that factual allegations, if proven, would show entitlement to relief).

## I.   <u>FACTUAL BACKGROUND</u>[1]

On December 13, 2002, Petitioner robbed the Generic Depot Pharmacy at gunpoint.  Tr. 225.

Petitioner, while waving and pointing a gun, grabbed a customer (Patricia Vann) in a headlock, and

ordered a pharmacy technician (Lori Gelles) and the store owner (Stephen Schwartz) to lie on the

floor.  Tr. 205-09, 225-26, 235-36, 253, 272-74, 276-78, 453-57.  Petitioner demanded oxycodone

and money from the cashier (Linda Lemos), and threatened to kill everyone if anyone did anything

wrong.  Tr. 205-08, 213, 227, 228, 456-57.  After receiving a box of oxycodone pills[2] and cash

from the register, Petitioner released the hostages and fled.  Tr. 279, 418, 419, 457.  Pharmacy

employees recognized Petitioner as a customer and provided police with his full name and address.

Tr. 287, 458-59.  Petitioner was quickly located and arrested, at which time he provided a detailed

recorded confession.  Tr. 399-403, 411-23.

On January 17, 2003, Petitioner was charged by Information in the Seventeenth Judicial

Circuit for Broward County, Florida.  (ECF No. 13-1, Ex. 2).  More specifically, Petitioner was

charged with kidnapping with a firearm (Count 1), robbery with a firearm (Count 2), and trafficking

in more than 28 grams but less than 30 kilograms of oxycodone (Count 3).  *Id.*  Petitioner pled not

guilty and  proceeded to trial on September 26, 2006.  (ECF No. 13-1, Ex. 1).

During *voir dire*, Petitioner's counsel ("trial counsel") advised the jury that he would present

an insanity and a voluntary intoxication defense, and questioned the panel members on their ability

to fairly consider such defenses.  Tr. 130-35, 150-59.  Counsel also discussed these defenses during

opening statement.  Tr. 198-202.  On the second day of trial (Wednesday, September 27, 2006),

---

[1] This Section summarizes the evidence adduced at trial.  *See* (ECF No. 13-1, Ex. 3, "Trial Transcript") (hereinafter cited as "Tr."); *see also* (ECF No. 1 at 5-16) (Petitioner's summary of the trial evidence).  For consistency with previous motions, all references to the Trial Transcript will cite to the page numbers in the original transcript, not the Southern District of Florida's CM/ECF page numbers appearing on the banner on top of each page.

[2] The box contained 2,000 pills, valued at approximately $8,981.  Tr. 284-85.

counsel advised the court that the defense expert on the insanity defense needed a few extra days (until the following Tuesday, since Monday was a holiday) to complete her opinion. Tr. 261-62. Although the trial judge refused to delay the trial on this basis, the judge agreed to "work within the parameters of [the expert's] scheduling within reason." Tr. 261-62. Two days later (on September 28, 2006), counsel advised the court that he had received the expert's opinion, but would not be using it at trial, purportedly because it did not support Petitioner's insanity defense. Tr. 394. Accordingly, counsel abandoned this defense and focused on presenting a voluntary intoxication defense. Tr. 395.

Ultimately, counsel did not call any experts during trial, relying instead on cross-examination of the State's witnesses and on Petitioner's testimony to establish the voluntary intoxication defense.[3] Tr. 297-305, 345-53, 476-94. During his testimony, Petitioner admitted that he was addicted to oxycodone and used the pills to get high. Tr. 482, 485. Petitioner also admitted that he crushed and snorted the pills, could ingest 60 pills in a two- or three-day period, and would have taken a "thousand pills" if he had that many. Tr. 501-02.

Among the evidence presented at trial, the jury heard Petitioner's recorded confession and the testimony of several eyewitnesses (Vann, Gelles, Schwartz, and Lemos), all of whom identified Petitioner as the armed robber. Tr. 211, 228, 243, 244, 278-79, 454-55. After three days of trial, Petitioner was convicted on all counts. (ECF No. 13-1, Ex. 4). Thereafter, on October 31, 2006, Petitioner was sentenced to life imprisonment on Counts 1 and 2, and 25 years imprisonment on Count 3, all to run concurrently. (ECF No. 13-1, Ex. 6). On the following day, Petitioner returned

---

[3] Trial counsel attempted to establish the voluntary intoxication defense through cross-examination of shop owner Schwartz and pharmaceutical representative Greg Sparta. Tr. 297-310, 345-53. The court, however, did not permit counsel to use these individuals as defense witnesses and instructed trial counsel to call its own experts or recall these witnesses during the defense case. *See, e.g.*, Tr. 300-01, 309-10.

to court for imposition of a corrected sentence, at which time the trial judge designated Petitioner as a Prison Release Reoffender ("PRR") and changed the sentence on Count 3 to 30 years' imprisonment.  (ECF No. 13-1 at 674-79, Ex. 5).

## II.    PROCEDURAL HISTORY

### A.    Direct Appeal

On November 1, 2006, Petitioner appealed his conviction to the Fourth District Court of Appeal ("Fourth DCA").  (ECF No. 13-1, Ex. 7).  Petitioner's only argument on direct appeal was that the trial court should have suppressed Petitioner's post-arrest statement because it was not freely and voluntarily made and had been induced by the detective's implied promise to help Petitioner to overcome his addiction problem.[4]  (ECF No. 13-1 at 721-22, Ex. 10).  On February 6, 2008, the Fourth DCA affirmed Petitioner's conviction and sentence in a *per curiam* opinion.[5] (ECF No. 13-1, Ex. 11); *Anaya v. State*, 975 So. 2d 1150 (Fla. 4th DCA 2008).  Mandate issued on April 4, 2008.  (ECF No. 13-1, Ex. 13).

### B.    First Motion for Post-Conviction Relief, pursuant to Fla. R. Crim. P. 3.850

On January 28, 2009, Petitioner filed a timely motion before the Seventeenth Judicial Circuit Court (the "trial court") for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  (ECF No. 13-1, Ex. 14).  In this first 3.850 motion, Petitioner argued that counsel had been ineffective by failing to: (i) investigate and present a voluntary intoxication defense;[6] (ii) object to the judgment for trafficking in oxycodone on double jeopardy grounds; (iii) move for pre-trial

---

[4] Petitioner mistakenly asserts that two issues were raised on direct appeal: (i) sufficiency of the evidence regarding the kidnapping charge; and (ii) re-sentencing issues.  *See* (ECF No. 1 at 13).

[5] On February 21, 2008, Petitioner filed a Motion for Rehearing/Clarification and Request for Written Opinion, which was summarily denied.  *See* (ECF No. 13-1, Exs. 12A and 12B).

[6] Throughout the record, the parties and trial court use the terms "voluntary" and "involuntary" interchangeably in referring to the voluntary intoxication defense.  For consistency, the undersigned will use the term "voluntary."

dismissal of the kidnapping charge; and (iv) object to the November 1, 2006 re-sentencing on double jeopardy grounds or file a motion to correct sentencing error.  (ECF No. 13-1, Ex. 14). Petitioner also argued that the trial judge committed fundamental error by not granting a judgment of acquittal on the kidnapping charge.  *Id.*  In its response, the State confessed error on Petitioner's sentencing argument, conceding that trial counsel should have objected to the re-sentencing on double jeopardy grounds.  (ECF No. 13-1 at 784-85, Ex. 15).

On September 11, 2009, the trial court granted Petitioner's post-conviction motion only as to counsel's failure to object to the PRR designation on re-sentencing, but denied the motion as to all other claims.  (ECF No. 13-1 at 790-91, Ex. 16).  Accordingly, the matter was remanded for re-sentencing on Counts 1 and 2.  *Id.*  On November 20, 2009, Petitioner was re-sentenced to the same concurrent life sentences on Counts 1 and 2 and was again designated as a PRR.  (ECF No. 13-1 at 864-65, Ex. 17); *see also* (ECF No. 13-1, Ex. 18).

### C.      Appeal to Fourth DCA of Denial of First 3.850 Motion

On November 23, 2009, Petitioner appealed the denial of his 3.850 motion for post-conviction relief.  (ECF No. 13-1, Ex. 19).  Petitioner argued that the lower court erred in denying without an evidentiary hearing his post-conviction motion for ineffective assistance of counsel based on counsel's failure to pursue both an insanity and voluntary intoxication defense.[7]  (ECF No. 13-1 at 916-24, Ex. 22).  Petitioner also challenged the PRR designation that was imposed upon re-sentencing.  (ECF No. 13-1 at 906-15, Ex. 22).

On September 21, 2011, the Fourth DCA reversed Petitioner's sentence on double jeopardy grounds and remanded the case with instructions that the PRR designation be stricken.  (ECF No. 13-

---

[7] Notably, Petitioner had not previously challenged trial counsel's failure to pursue the insanity defense, either on direct appeal or in his motion for post-conviction relief.  Rather, issues regarding the insanity defense were raised *for the first time* on appeal from the lower court's denial of Petitioner's 3.850 motion for post-conviction relief.  *See infra* IV.B. for further discussion.

1 at 951, Ex. 23).  Again, the appellate court found "no error in the trial court's summary denial of the [Petitioner's] other claims."[8]  (ECF No. 13-1 at 953, Ex. 23).  Mandate issued on October 21, 2011.  (ECF No. 13-1, Ex. 24).

      **D.**      **Federal Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254: The 2011 Petition**

On October 27, 2011, while awaiting his second re-sentencing, Petitioner filed his first federal habeas petition, pursuant to 28 U.S.C. § 2254.  *See generally Anaya v. McNeil*, No. 11-CV-62315-KMW (S.D. Fla. Oct. 27, 2011) (ECF No. 1) (the "2011 Petition").  The 2011 Petition asserted three grounds for relief:  (i)  that trial counsel was ineffective during the plea negotiation process[9] (2011 Petition at 34-51); (ii) that trial counsel was ineffective in failing to adequately investigate and prepare the case for trial, to formulate and present a coherent and effective defense, and to properly evaluate the case[10] (*Id.* at 52-58); and (iii) that the state drug trafficking statute (Count 3) was facially unconstitutional (*Id*. at 58-81).  In response, the State argued that Petitioner had failed to exhaust available state remedies.  Specifically, the State argued that the only ground that had been exhausted was the portion of Petitioner's second ground for relief that dealt with trial counsel's failure to prepare an voluntary intoxication defense.[11]  *Anaya v. McNeil*, (ECF No. 18 at 2-3).

---

[8] The Fourth DCA correctly noted that Petitioner's motion for post-conviction relief had alleged that counsel was ineffective for failing to adequately investigate and present a *voluntary intoxication defense*.  (ECF No. 13-1 at 951 n.1, Ex. 23).

[9] The federal habeas was the first time that Petitioner raised counsel's purported failure in negotiating a plea as a basis for an ineffective assistance of counsel claim.  *See infra* IV.B. for further discussion.

[10] Within the second claim, Petitioner argued that counsel was ineffective in failing to: (i) move to suppress the out-of-court and in-court identifications of Petitioner as the robber; and (ii) adequately investigate and prepare both a voluntary intoxication and an insanity defense.

[11] Petitioner conceded that he had not exhausted the third claim, in which he challenged the constitutionality of Florida's drug trafficking statute.  *Anaya v. McNeil*, (ECF No. 21 at 4).

Although the Magistrate Judge noted that the "particular factual instances of ineffective assistance of counsel [*i.e*., counsel's purported failings in the plea negotiation process, in moving to suppress the identifications of Petitioner, and in adequately investigating and preparing voluntary intoxication and insanity defenses] must first be presented to the state courts before a federal court will review them," the court found it unnecessary to address the exhaustion issues because it found that the 2011 Petition was simply not ripe for review. *Anaya v. McNeil*, (ECF No. 21 at 5). Specifically, the court found that the 2011 Petition was not ripe because "petitioner ha[d] not yet been re-sentenced in accordance with the September 21, 2011 decision of the Fourth District Court of Appeal." *Id*. Accordingly, the Magistrate Judge recommended that the 2011 Petition be dismissed without prejudice for lack of ripeness. *Id.* On October 12, 2012, the District Judge adopted the Report and Recommendation. *Id*. at (ECF No. 22).

### E.  Second Motion for Post-Conviction Relief, pursuant to 3.850

On September 11, 2013, Petitioner filed his second 3.850 motion for post-conviction relief in state court, arguing that counsel was ineffective: (i) during the plea negotiation phase of the case; and (ii) in failing to adequately investigate and prepare the case for trial, to formulate and present a coherent and effective defense, and to properly evaluate the case. *See generally* (ECF No. 13-1, Ex. 34). Petitioner also challenged his second re-sentencing, arguing that the trial court improperly struck the PRR designation without Petitioner being physically present. (ECF No. 13-1, Ex. 36).

In response, the State argued that each allegation of ineffective assistance of counsel was procedurally barred because it could have and should have been raised in Petitioner's initial 3.850 motion for post-conviction relief, which had been denied by the lower court and subsequently affirmed by the Fourth DCA. (ECF No. 13-1, Ex. 35); *see also Anaya v. State*, 70 So. 3d 703 (Fla. 4th DCA 2011). Thus, the State argued that the second petition should be denied as impermissibly successive and procedurally barred. (ECF No. 13-1 at 1066, Ex. 35).

On November 4, 2015, the lower court denied the motion.  (ECF No. 13-1, Ex. 38).  First, the court found that Petitioner had no right to be physically present when the trial court struck the PRR designation at re-sentencing.  *Id*.  Next, the court found that Petitioner's ineffective assistance of counsel claims were "untimely and impermissibly successive, without [having established] sufficient grounds to circumvent the procedural bar."  *Id*.  Petitioner filed a motion for rehearing, which the court denied after argument on April 8, 2016.  (ECF No. 13-1, Exs. 39, 40, 41).

### F.       Appeal to Fourth DCA of Denial of Second 3.850 Motion

On April 9, 2016, Petitioner appealed the denial of his second 3.850 motion for post-conviction relief to the Fourth DCA, arguing that  the lower court erred in dismissing the second petition as untimely.  (ECF No. 13-1, Exs. 42, 43, 45).  On January 26, 2017, the Fourth DCA affirmed the denial.  (ECF No. 13-1, Ex. 46).  Petitioner's motion for rehearing and a written decision was denied on February 9, 2017.  (ECF No. 13-1, Exs. 47A and 47B).  Mandate issued on March 24, 2017.  (ECF No. 13-1, Ex. 48).

### G.       Second Federal Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254

On March 23, 2017, Petitioner filed an Amended Complaint/Re-filed Petition for Writ of Habeas Corpus, under the same case number as the 2011 Petition (Case No. 11-CV-62315-KMW).  *See Anaya v. McNeil*, (ECF No. 23).  According to Petitioner, his petition was filed "on March 23, 2017 Nunc Pro Tunc to the filing date of his [2011] Petition, October 27, 2011."  (ECF No. 1 at 4).

On October 19, 2017, the then-presiding District Judge held a hearing and directed Petitioner to refile the petition as a separate case.  *Anaya v. McNeil*, (ECF No. 30 at 3) (corrected transcript of telephonic hearing).  The Judge noted that the petition was not simply an amended complaint, but a new filing that needed to be separately filed and served on the parties.  *Id*. at 4.  Accordingly, on the same date, Petitioner filed the instant Petition for federal habeas relief ("Second Petition").  *See Anaya v. Jones*, Case No. 17-CV-62058-RS (ECF No. 1).

In this Second Petition, Petitioner argues that he is entitled to habeas relief because his trial counsel was constitutionally deficient:  (i) during the plea negotiation phase of the case; and (ii) throughout trial in failing to formulate and present a coherent and effective defense.  *See generally,* (ECF No. 1 at 24).  Petitioner acknowledges that "[t]his Second Petition is identical in substantive content to the Amended/Refiled Petition in [*Anaya v. McNeil*]," filed in March 2017. (ECF No. 1 at 2).  In addition, Petitioner requests an evidentiary hearing on the merits of his claims. (ECF No. 1 at 37-38).

### III.    LEGAL STANDARDS FOR § 2254 PETITIONS

#### A.    28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") limits the availability of federal post-conviction relief to state prisoners.  Specifically, 28 U.S.C. § 2254(d), as amended by AEDPA, directs that writs of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings," unless the petitioner can establish that the State court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1).  This standard is "highly deferential," requiring that "state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under § 2254(d), a petitioner must demonstrate that the State court's application of Supreme Court precedent was "objectively unreasonable."  *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citation omitted).  An "*unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). Because "the state court's decision must have been more than incorrect or erroneous," *Wiggins*, 539 U.S. at 520, the Supreme Court has repeatedly described the § 2254(d) standard as "difficult to meet." *Harrington*, 562 U.S. at 102; *Cullen*, 563 U.S. at 181.

As the Supreme Court has explained, § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington*, 562 U.S. at 102.  The statute "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

## B.  Ineffective Assistance of Counsel

The "clearly established Federal law" for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Marshall v. Sec'y, Fla. Dep't Corr.*, 828 F.3d 1277, 1284 (11th Cir. 2016).  To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must demonstrate both: (i) that his counsel's performance was deficient; and (ii) actual prejudice resulting from the deficient performance.  *Strickland*, 466 U.S. at 693-94.

First, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  The test to determine whether an attorney's performance was deficient "has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  [The test is] only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted at trial." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992).  In assessing counsel's performance, a court must avoid second-guessing with the benefit of hindsight and must presume that counsel's performance was reasonable and adequate.  *Strickland*, 466 U.S. at 689; *see also Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient where it fails to meet "an objective standard of reasonableness," judged according to "prevailing professional norms." *Strickland*, 466 U.S. at 687-88.  Indeed, the Eleventh Circuit has adopted a "strong"

presumption that counsel's performance was reasonable, and has noted that "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken *might be considered* sound trial strategy." *Putnam v. Head*, 286 F.3d 1223, 1243 (11th Cir. 2001) (emphasis added) (citations and quotations omitted).  Because a wide range of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers*, 13 F.3d at 386.

The second prong of the *Strickland* test requires a petitioner to show that the lawyer's deficient performance resulted in actual prejudice.  *Strickland,* 466 U.S. at 687, 693.  Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Lastly, because "the standards created by *Strickland* and § 2254 are both highly deferential . . . when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations omitted).

A court, however, is not required to "address both components of the [*Strickland*] inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697.  As the Supreme Court has stated, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." *Id.*  Significantly, the task of this Court in considering a § 2254 petition is not to repeat the inquiry of the state habeas court and assess whether counsel's performance met the *Strickland* standard for effective assistance; rather, the task of this Court is only "to determine whether the state habeas court was objectively reasonable in its *Strickland* inquiry." *Putnam*, 268 F.3d at 1244 n.17.

In rare circumstances, a prisoner may be entitled to a presumption of ineffective assistance of counsel without an inquiry into counsel's actual performance.  *See United States v. Cronic*, 466 U.S.

648, 658 (1984) ("There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.").  The *Cronic* presumption is reserved for circumstances where a defendant was actually or effectively unrepresented at a critical stage of trial.  *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (discussing the three circumstances in which *Cronic* may apply: (i) where a defendant has no counsel; (ii) where circumstances prevent counsel from rendering assistance; and (iii) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing").

## IV.   DISCUSSION

Petitioner asserts that trial counsel was ineffective in two areas.  First, Petitioner contends that counsel failed to engage in and explain the plea negotiation process.[12]  (ECF No. 1 at 40-58). Second, Petitioner claims that counsel failed to adequately investigate and prepare an effective defense for trial and evaluate the strengths/weaknesses of Petitioner's case.  *Id.* at 58-66.  Within the broad umbrella of the second claim, Petitioner argues that counsel's failure to formulate a coherent defense strategy resulted in an inability to "realistically evaluate the case and [Petitioner's] chances, if any, at success."  (ECF No. 1 at 58).  As examples of counsel's many purported errors, Petitioner points to counsel's failure to file a motion to suppress Petitioner's identification, discuss the plea bargaining process, and counsel's use of a "fairy tale" defense strategy (using the insanity and voluntary intoxication defenses) to convince the jury that Petitioner lacked the specific intent to commit the crimes.  *Id.* at 58-61.

---

[12] Petitioner flip-flops between arguing that counsel failed to engage in plea negotiations and arguing that counsel failed to convey to Petitioner the State's purported "plea offer of a term of years." *Compare* (ECF No. 1 at 45, 46, 51, 52, 55) (generally alleging that counsel failed to engage in the plea negotiation process or solicit a plea) *with* (ECF No. 1 at 43-44, 45, 46, 50-51, 54, 57) (alleging that counsel failed to timely advise Petitioner of the State's plea offer of an unspecified term of years). There is no evidence in the record to support either argument.

In response, the State argues that the Petition should be dismissed because: (i) it is untimely; (ii) the claims are unexhausted and/or procedurally barred; and (iii) Petitioner has not met the *Strickland* standards for ineffective assistance of counsel. *See generally* (ECF No. 13). As discussed below, the undersigned recommends that the Petition be dismissed.

### A.     The Petition is Untimely

28 U.S.C. § 2244(d)(1) requires that a petition for a writ of habeas corpus be submitted within one year of a final state court judgment. The State argues that Petitioner's judgment became final on January 20, 2012,[13] when the 30-day period to appeal Petitioner's December 21, 2011 re-sentencing expired. (ECF No. 13 at 7). Thus, the State argues that Petitioner had one year from January 20, 2012 to file a federal habeas petition under the AEDPA, but the instant Petition was not filed until October 19, 2017, well beyond the one-year statutory period. *Id.*

Petitioner argues, however, that the instant Petition was "filed at the direction of [the formerly presiding District Judge], specifically to take the place of Anaya's Amended/Refiled Petition [that] was filed as part of and under the original case number 0:11-cv-62315-KMW." (ECF No. 1 at 2). More specifically, Petitioner argues that the current Petition was filed in *Anaya v. McNeil* on March 23, 2017, "*nunc pro tunc* to the original filing [of the 2011 Petition], October 27, 2011." (ECF No. 1 at 16). To support this retroactivity argument, Petitioner asserts that: (i) during the October 2017 telephonic hearing, the then-presiding District Judge ordered him to refile the Petition under a new case number, noting that there would be "no limitation issues . . . no 'out of time issues,'" (ECF No. 1 at 4); and (ii) the Magistrate Judge dismissed the 2011 Petition "without prejudice to refile when it is ripe for review," (ECF No. 1 at 3). Petitioner claims that "[i]t was the "refile" language

---

[13] The State's response mistakenly listed the date as January 20, 2011. *See* (ECF No. 13 at 7).

[that] prompted [Petitioner] to file Anaya's Amended/Refiled Petition under the original case number, 0:11-CV-62314-KMW."  (ECF No. 1 at 3).

The undersigned rejects Petitioner's "nunc pro tunc" argument as a thinly veiled attempt to circumvent the AEDPA's one-year limitation period.  First, although both the District Judge and Magistrate Judge gave Petitioner the opportunity to re-file, neither judge—either expressly or impliedly—gave Petitioner carte blanche to file beyond the AEDPA's one-year statute of limitation period.  Petitioner's argument to the contrary is factually and legally unsupported and would eviscerate the AEDPA's limitations period.  For example, in Petitioner's scenario, "[a] habeas petitioner could file a non-exhausted application in federal court within the limitations period and suffer a dismissal without prejudice.  He could then wait decades to exhaust his state court remedies and could also wait decades after exhausting his state remedies before returning to federal court to 'continue' his federal remedy, without running afoul of the statute of limitations."  *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (quoting *Graham v. Johnson*, 168 F.3d 762, 780 (5th Cir. 1999)).  Such a result is contrary to the AEDPA.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)) ("The "AEDPA's purpose [is] to further the principles of comity, finality, and federalism.)."

Second, the record of the telephonic hearing confirms that the District Judge did not rule upon whether there were "out of time issues" with the re-filing.  The Judge simply stated:  "Now, I —of course, I look into whether or not a re-filing—I don't think—here's no limitation, there's no out of time issue."  *Anaya v. McNeil*, (ECF No. 30 at 3).  That singular impromptu statement, however, is insufficient to excuse the belated filing of the Petition.[14]

---

[14] Petitioner does not argue that the dismissal of the 2011 Petition somehow entitles him to equitable tolling.  Indeed, although the Magistrate Judge made a passing reference to the possibility of a "stay and abeyance" under *Rhines v. Weber*, 544 U.S. 269 (2005), the Judge recommended dismissal without prejudice, not stay and abeyance.  *Anaya v. McNeil*, (ECF No. 21 at 5-6).  The District Judge adopted this recommendation, and the 2011 Petition was dismissed without prejudice on

Third, the chronology of Petitioner's post-conviction efforts leads to the conclusion that the Petition is untimely. "In the context of a federal habeas petition, the statute of limitations runs from the date of state resentencing and not the date of the original judgment." *Maharaj v. Sec'y, Fla. Dep't of Corr.*, 304 F.3d 1345, 1348 (11th Cir. 2002). Here, Petitioner was re-sentenced on December 21, 2011, which sentence became final thirty days later (January 20, 2012) when the time for appeal expired. Thus, the AEDPA's one-year statute of limitations would have expired on January 19, 2013, years before the filing of the instant Petition.

Lastly, Petitioner has cited no support for the proposition the instant Petition should relate back (or be considered filed nunc pro tunc) to the 2011 Petition. (ECF No. 1 at 16). Indeed, the Eleventh Circuit has rejected this argument. *Nyland v. Moore*, 216 F.3d 1264, 1266 (11th Cir. 2000) (no error in District Court's decision that declined to relate a second § 2254 petition back to a timely-filed initial petition that had been dismissed without prejudice); *see also Marsh*, 223 F.3d at 1220 (habeas petition, filed after an earlier petition had been dismissed without prejudice, does not relate back to the earlier petition); *Jones v. Morton*, 195 F.3d 153, 160-61 (3rd Cir. 1999) (rejecting argument that third habeas petition should relate back to the filing of first or second petition, both of which had been previously dismissed without prejudice). As well, because the state court had found that Petitioner's second 3.850 motion for post-conviction relief was "improperly successive and untimely," the filing of that second 3.850 motion did not toll the one-year AEDPA limitation period. *See Gorby v. McNeil*, 530 F.3d 1363, 1367-68 (11th Cir. 2008) (where second 3.850 motion was untimely under Florida law, the motion was not "properly filed" for purposes of AEDPA's tolling provision and § 2254 petition was therefore time-barred); *Pace v. DiGuglielmo*, 544 U.S. 408, 417

---

October 12, 2012. *Anaya v. McNeil*, (ECF No. 22).

(2005) (where a state court has rejected a petition for post-conviction relief as untimely, the petition was not "properly filed" and petitioner was not entitled to statutory tolling under § 2244(d)(2)).

Accordingly, the undersigned recommends that the Petition be denied as untimely.

### B. Petitioner has Failed to Exhaust State Remedies

Alternatively, Petitioner's arguments regarding counsel's ineffectiveness in his handling of the insanity defense and the plea negotiation process are also unavailing because Petitioner has failed to exhaust available state court remedies, which are now procedurally barred.

It is well-established that before a writ of habeas corpus may be granted to an individual in state custody, the individual must first have exhausted all remedies that are available in state court to challenge his conviction.  28 U.S.C. § 2254(b), (c); *Michel v. Inch*, No. 17-CV-61469, 2019 WL 1904110, at *4 (S.D. Fla. Apr. 9, 2019); *Harris v. Sec'y, Fla. Dep't of Corr.*, 709 F. App'x 667, 668 (11th Cir. 2018).  To properly exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the State's highest court, either on direct appeal or on collateral review. *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 456-59 (11th Cir. 2015); *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979); *see Gacita v. Jones*, No. 15-60024-CIV, 2015 WL 5730005, at *2 (S.D. Fla. Sept. 8, 2015); *see also Duncan v. Walker*, 533 U.S. 167, 178-79 (2001) ("The exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment").

Here, the undersigned finds that Petitioner has failed to exhaust available state court remedies regarding counsel's purported ineffectiveness in pursuing the insanity defense and the plea negotiation process.  Petitioner raised trial counsel's failure to pursue the insanity defense for the first time *on appeal* from the lower court's denial of Petitioner's initial 3.850 motion for post-conviction relief.  Accordingly, Petitioner failed to properly exhaust available state court remedies as to the

insanity defense.[15]  *See, e.g., Harris,* 709 F. App'x at 668 (citing *Mendoza v. State*, 87 So. 3d 644, 660 (Fla. 2011) ("A party cannot raise a new claim for the first time in an appeal from a post-conviction motion in a Florida appellate court."); *see also Mize v. Hall*, 532 F.3d 1184, 1190-91 (11th Cir. 2008) (petitioner failed to exhaust claim raised for the first time on appeal from denial of state habeas petition); *Trotter v. State*, 932 So. 2d 1045, 1051 (Fla. 2006) (issue raised for first time on appeal from lower court's denial of 3.850 motion was not preserved for appellate review); *Gordon v. State*, 863 So. 2d 1215, 1219 (Fla. 2003) (issue raised for first time on appeal from denial of 3.850 motion could not be considered).

Similarly, Petitioner did not raise counsel's alleged failure to participate in the plea negotiation process or secure a plea either on direct appeal, the initial 3.850 motion, or the appeal that followed that denial.  Indeed, the first time Petitioner raised this ground as a basis for an ineffective assistance claim was in the 2011 Petition.  *See Anaya v. McNeil*, (ECF No. 1).   After the 2011 Petition was dismissed, Petitioner attempted to bring this argument before the state court in a second 3.850 motion, but the motion was rejected as untimely and impermissibly successive.  *See* (ECF No. 13-1, Ex. 34) (Petitioner's second 3.850 motion, alleging ineffectiveness during plea negotiation phase); (ECF No. 13-1, Ex. 38) (order denying second 3.850 motion as "untimely and impermissibly successive"); *see also* (ECF No. 13-1, Ex. 46) (Fourth DCA's affirmance of denial of second 3.850 motion). Accordingly, Petitioner has failed to properly exhaust available state court remedies regarding the plea negotiation process.

---

[15] Moreover, Petitioner's argument that counsel was ineffective in failing to prepare an insanity defense through an expert also fails on the merits.  Trial counsel advised the judge that, after consultation with defense expert Dr. Trudy Block-Garfield, he had decided not to pursue the insanity defense and would not be seeking any jury instructions on this issue.  Tr. 394.  Counsel cannot be deemed ineffective for failing to raise a meritless argument.  *See Allen v. Sec'y, Dep't of Corr.*, 767 Fed. App'x. 786, 791 (11th Cir. 2019); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

C.  **Petitioner is Procedurally Barred from Raising These Claims in State Court**

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine.  If [a] petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief" unless the petitioner can show:  (i) cause for and actual prejudice from the default; or (ii) a fundamental miscarriage of justice if the claim is not considered.  *Gacita*, 2015 WL 5730005, at *2, *3 (citing *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001)); *see also Mize*, 532 F.3d at 1190; *Boykin v. Sec'y, Fla. Dep't of Corr.*, No. 6:16-CV-883-Orl-40DCI, 2018 WL 9439838, at *2 (M.D. Fla. July 5, 2018); *Hamm v. Comm'r, Alabama Dep't of Corr.*, 620 F. App'x 752, 762 (11th Cir. 2015).  To establish "cause" for a default, a petitioner must show that his post-conviction counsel was ineffective under *Strickland*.  *See Martinez v. Ryan*, 566 U.S. 1, 14 (2012).  In addition to "cause," the petitioner must demonstrate "prejudice" from the default by showing that the underlying ineffective assistance of trial counsel claim has some merit.  *Id*.

Here, state procedural rules bar Petitioner from filing a renewed 3.850 motion on counsel's purported failures in connection with the plea negotiation process and the insanity defense.  As to these claims, the two-year statutory deadline within which to file a 3.850 motion in state court has expired.  *See* Fla. R. Crim. P. 3.850(b); *see also Saavedra v. State*, 59 So. 3d 191, 192 (Fla. 3d DCA 2011) (3.850 motions must be filed in state court within two years after appellate proceedings have concluded); *see also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (noting that federal courts "may treat unexhausted claims as procedurally defaulted . . . if it is clear from state law that any future attempts at exhaustion would be futile.") (citations omitted).  Moreover, Petitioner has failed to establish "cause and prejudice" sufficient to excuse his failure to exhaust these claims.

Petitioner summarily argues that he meets the "cause and prejudice" exception because his trial attorney's ineffective assistance during the plea negotiation process and trial "adequately

supports . . . the 'cause and prejudice [exception].'"  (ECF No. 1 at 57-58, 65).  The performance of his *trial attorney*, however, does not explain Petitioner's failure to file a comprehensive post-conviction motion for relief that included all grounds that existed at the time.  Petitioner has not shown that his *post-conviction counsel* was ineffective under *Strickland. Martinez,* 566 U.S. at 14.  Thus, Petitioner has not established "cause" for the default.  *Gacita*, 2015 WL 5730005, at \*3.

For the foregoing reasons, these claims are procedurally barred and the Petition should be denied.  *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006) ("Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, but . . . if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding.") (citation omitted).

### D.  Petitioner Fails to Satisfy *Strickland* Standard

Thus, Petitioner's only arguably exhausted claim is his argument that trial counsel was ineffective in failing to investigate and develop a voluntary intoxication defense.  *See, e.g.,* (ECF No. 1 at 59-61).  Assuming, without deciding, that this particular factual basis of ineffective assistance of counsel has been exhausted, it must nonetheless be denied because the Petition is untimely.  Alternatively, this claim also fails on the merits.

Petitioner argues that he has shown ineffective assistance of counsel under either the *Cronic* or the *Strickland* standard.  (ECF No. 1 at 36).  As a preliminary matter, the undersigned finds that Petitioner is not entitled to a presumption of ineffective assistance of counsel under *Cronic*. The *Cronic* presumption is reserved for rare circumstances where a defendant was actually or effectively unrepresented at a critical stage of trial.  *See Bell*, 535 U.S. at 695-98.  Here, however, Petitioner had counsel at every stage of the trial.  In addition, Petitioner has not shown that trial counsel was prevented from presenting a defense, or that trial counsel entirely failed to subject the prosecution's

case to adversarial testing.  Petitioner admits that trial counsel moved to suppress some of the more damning evidence against him and attempted to elicit testimony on cross-examination that would support the voluntary intoxication defense.  (ECF No. 1 at 6, 9).  Under these circumstances, *Cronic* is inapplicable.  Therefore, Petitioner must show ineffective assistance of counsel under the *Strickland* standard.

Petitioner points to trial counsel's failure to call an expert to support the voluntary intoxication defense as evidence that counsel was ineffective.  *See* (ECF No. 1 at 61, 63).  But Petitioner has not shown that any expert, including those initially retained by the defense, would have testified to support the defense theory of voluntary intoxication.  Mere speculation that missing witnesses might have provided helpful testimony is insufficient to establish that counsel's decision not to call these witnesses was deficient.  *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) (citing *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001)) (mere speculation that missing witness would have helped the defense is insufficient to meet petitioner's burden of proof).  Rather, evidence about the missing witness' purported testimony "must generally be presented either in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *Boykin,* 2018 WL 9439838, at *4 (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also Streeter,* 335 F. App'x at 864 (petitioner's subjective belief about the substance of potential testimony, without supporting facts or affidavit, was insufficient to support claim of ineffective assistance of counsel).

Moreover, a "decision whether to call a particular witness is generally a question of trial strategy that should seldom be second guessed."  *Long v. McNeil*, No. 09-60250-CIV, 2010 WL 1138913, at *4 (S.D. Fla. Feb. 10, 2010) (citing *Conklin v. Schofield*, 366 F.3d 1193, 1204 (11th Cir. 2004), *cert. denied*, 544 U.S. 952 (2005)); *see also Dorsey v. Chapman*, 262 F.3d 1181, 1186

(11th Cir. 2001) (petitioner did not establish ineffective assistance based on counsel's failure to call expert witness because counsel's strategic decision was not so patently unreasonable that no competent attorney would have chosen the strategy).  Indeed, the determination of which witnesses to call "is the epitome of a strategic decision, and it is one that [the Court] will seldom, if ever, second guess." *Stepp v. Jones*, No. 16-25170-CIV, 2018 WL 9439863, at *9 (S.D. Fla. Aug. 29, 2018) (citing *Shaw v. United States*, 729 F. App'x 757, 759 (11th Cir. 2019)).  Ultimately, trial counsel's decision not to call any experts enabled counsel to: (i) use Petitioner's testimony (that he abused oxycodone) to argue to the jury that Petitioner lacked the specific intent to commit the crimes charged; and (ii) to obtain a jury instruction on the voluntary intoxication defense.  Tr. 539-52, 557-64, 585-87, 607-09.  It is unlikely that either would have been possible had the expert testified.  *See Stepp,* 2018 WL 9439863, at *9 (counsel's decision not to call a witness advanced defense theory of the State's lack of evidence and was not deficient).  Counsel "cannot be adjudged incompetent . . . as long as the approach taken might be considered sound trial strategy."  *Putnam,* 286 F.3d at 1243 (citations and quotations omitted); *see Long*, 2010 WL 1138913, at *5 (counsel's failure to call certain witnesses was not unreasonable when counsel elected to challenge the State's evidence through cross-examination and forceful argument to the jury).  The fact that the voluntary intoxication defense was ultimately unsuccessful does not establish that counsel's performance was deficient.  Accordingly, the undersigned finds that trial counsel's performance did not fall below "an objective standard of reasonableness" under prevailing professional norms.  *Strickland*, 466 U.S. at 687.

In any event, under *Strickland,* a court need not determine whether counsel's performance was deficient where, as here, Petitioner cannot show prejudice.  *Id.* at 697.  To establish actual prejudice, Petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Williams v. Allen*, 598 F.3d 778, 789 (11th Cir. 2010) (quoting *Strickland*, 446 U.S. at 694)).  Petitioner failed to do

this.  Here, the trial evidence reveals that "even if counsel had done each of the . . . things that [Petitioner] alleged counsel had failed to do . . . , there is not even the remotest chance that the outcome would have been any different." *Strickland*, 466 U.S. at 677-78 (quotations omitted); *see also Harrington,* 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").  Petitioner cannot surmount the overwhelming and uncontroverted evidence that Petitioner robbed the pharmacy at gunpoint, kidnapped customers, and confessed to the crime.  Given the weight of the evidence against Petitioner, including his recorded confession, multiple eyewitness testimony, and Petitioner's own trial testimony, it is highly improbable that a different or even a stronger presentation of a voluntary intoxication defense would have changed the outcome of the case.

Moreover, the voluntary intoxication defense applies only in very narrow circumstances, and the facts of this case were inconsistent with those circumstances.[16]  Thus, even if trial counsel could arguably have used the defense to better effect, Petitioner has not shown that a better presentation of the voluntary intoxication defense would have led to a different result.  *Strickland,* 466 U.S. at 694-95.  Under these circumstances, the undersigned finds that "[t]he overwhelming evidence of [Petitioner's] guilt . . . makes it obvious that [Petitioner] cannot show *Strickland* prejudice." *Bates v. Sec'y, Fla. Dep't. of Corr.*, 768 F.3d 1278, 1300 n.9 (11th Cir. 2014); *see also Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995) (holding that the defendant's ineffective assistance of counsel claims are "due to be denied because the evidence of guilt was so overwhelming that [the defendant] cannot show prejudice from any of the claimed shortcomings of his counsel").  Even if

---

[16] Florida law permits the voluntary intoxication defense only where the defendant uses a controlled substance as directed, pursuant to a lawful prescription. Fla. Stat. § 775.051.  In contrast,  Petitioner testified that he took oxycodone to "get high" and not for a legitimate medical purpose.  Tr. 482, 485.  Petitioner also testified that he crushed and snorted the pills, could take up to 60 pills in a two- or three-day period, and would have taken a "thousand pills" if he had that many.  Tr. 501-02.

counsel had done everything Petitioner complains was lacking, the "likelihood of a different result [would not] be substantial." *Harrington*, 562 U.S. at 112.

Accordingly, the Petition should be denied as Petitioner has failed to establish both *Strickland* prongs.

## V.      CERTIFICATE OF APPEALABILITY

A petitioner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal. Rather, petitioner must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). A COA should be issued only when petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Michel*, 2019 WL 1904110, at *10 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). However, when the district court rejects the claim on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Michel*, 2019 WL 1904110, at *10; *Slack*, 529 U.S. at 484. Under either ground, the undersigned recommends that the District Court deny a COA.

## VI.      RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that: (i) the Petition (ECF No. 1) be **DENIED**; and (ii) a Certificate of Appealability be **DENIED**.

Within fourteen days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure

to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

      **DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, May 29, 2020.


                                         ALICIA O. VALLE
                                         UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
     All Counsel of Record